EXHIBIT

A

exhibitsticker.com

## IN THE IOWA DISTRICT COURT FOR SIOUX COUNTY

| | |
|---|---|
| **BLACK SOIL DAIRY, LLC,**<br>**Plaintiff,**<br><br>vs.<br><br>**LAND O'LAKES, INC. and RIDLEY USA INC.( d/b/a HUBBARD FEEDS INC.),**<br>**Defendants.** | **CASE NO. _____**<br><br>**PETITION AND JURY DEMAND** |

## PARTIES, JURISDICTION, AND VENUE

1. Plaintiff, Black Soil Dairy, LLC, at all times material hereto was a Michigan limited liability company registered to do business in the State of Iowa.

2. Defendant, Ridley USA, Inc., (d/b/a Hubbard Feeds, Inc., at all times material hereto was a Minnesota corporation registered in the State of Iowa.

3. Defendant, Land O'Lakes, Inc., at all times material hereto was a Minnesota corporation, registered in the State of Iowa.

4. The cattle that is, in part, the subject of the causes of action and damages alleged herein, were located in Sioux County, Iowa.

5. The negligence, breach of implied warranty of fitness for a particular purpose, breach of duty assumed giving rise to Plaintiffs' causes of action occurred in Sioux County, Iowa.

6. Venue is property laid in this jurisdiction pursuant to Iowa Code 616.18 (2015).

7. The damages sustained by Plaintiff far exceed the jurisdiction amount of small claims court.

## OPERATIVE FACTS

8.  This lawsuit involves a situation of tainted milk replacement feed, which lead to the death of 157 calves owned by the Plaintiff, Black Soil Dairy, LLC ("Black Soil Dairy") of Granville, Iowa.

9.  At all times material, Hubbard Feeds, Inc. (owned by Ridley USA, Inc., which is owned by Alltech, Inc.) (collectively "Hubbard") and Land O'Lakes, Inc. ("Land O'Lakes") (collectively "Defendants") were hired to mix and deliver milk replacement to Black Soil Dairy.

10. In early 2016, milk replacement feed was delivered and given to calves at Black Soil Dairy by the Defendants.

11. In August 2016, the feed manager for Black Soil Dairy's calves and the manager at Black Soil Dairy expressed concern about calf performance in terms of morbidity (sickness) and mortality (death).

12. As a result of the concerns (including morbidity and mortality), Black Soil Dairy began investigating the problem and reviewed the feeding method to see if it had been altered or changed.

13. As a result of checking the feeding method, it was found that the milk replacer purchased from Defendants was discolored and there were "black bits" in it.

14. On August 10, 2016, a local veterinarian, conducted a postmortem examination on a Black Soil Dairy calf, concluding that it died from Salmonella Dublin. An examination of two other claves on August 11, 2016 and August 13, 2016, concluded that these calves also died from salmonella.

15. The local veterinarian observed that there had been a problem with the milk replacer obtained from Hubbard and Land O'Lakes, which contributed to the severity of the salmonella. Additionally, when the milk replacer had been changed, the calves improved.

16. On August 15, 2016 the herd veterinarian visited Black Soil Dairy and recommended that Black Soil Dairy change the milk powder feed immediately, as the calves seemed to be suffering from malnourishment through inadequate quality of product produced and sold by Defendants.

17. After changing the milk replacement product, the calves were improved.

## COUNT I – NEGLIGENCE

18. Paragraphs 1 through 17are incorporated herein as if fully set forth herein.

19. Hubbard and Land O' Lakes owed a duty of care to Black Soil Dairy to mix the milk replacement delivered for Black Soil Dairy's calves using untainted milk, at a minimum, in a reasonably safe condition.

20. Hubbard and Land O'Lakes were negligent in one or more of the following particulars:

   a. In mixing the feed in such a manner that caused malnourishment even though the calves were getting fed well within the recommended amounts;

   b. In failing to ensure proper levels of nourishment to prevent weakened immune systems in the calves, and therefore predisposing calves to infectious diseases;

   c. In failing to follow standard feed mixing practices by using tainted milk product;

   d. In failing to properly inspect the feed as mixed and delivered to the Plaintiff to ensure the product conformed to applicable standards in the feed industry; and,

   e. In failing to act as a reasonable and prudent feed company under the circumstances described above.

21. As a result of Defendants' negligence, Black Soil Dairy has suffered property damage, and have incurred economic damages.

22. The negligence of Hubbard and Land O' Lakes was the proximate cause of the damages to Black Soil Dairy.

WHEREFORE, Plaintiff, Black Soil Dairy, pray for judgment against Hubbard for negligence, and for an amount that will fully and fairly compensate the Plaintiff for its losses, actual, consequential, and incidental damages; together with interest as provided by law, and for such other and further relief as the Court deems just and proper.

## COUNT II – BREACH OF IMPLIED WARRANTY OF FITNESS

23. Paragraphs 1 – 22 of the Petition are incorporated as if fully set forth herein,

24. Hubbard and Land O'Lakes designed, controlled, and directed the milk replacement mixture and under Iowa law is responsible for an implied warranty of fitness for a particular purpose.

25. As a proximate cause of tainted milk, the milk replacement was inadequate, leading to malnourishment, an increased risk of infection and death among the calves.

26. The failure of Defendants to use untainted milk product in its milk replacement constitutes a breach of implied warranty that would be reasonably fit for the intended use and purpose of feed to the Black Soil Dairy calves.

27. The tainted milk product in the milk replacement was latent at the time of payment and Black Soil Dairy was unaware of the defect and had no reasonable means of discovering them until the sickness and deaths manifested in the calves.

28. As a direct and proximate result of the defective milk replacement, Black Soil Dairy suffered damages.

WHEREFORE, Plaintiff, Black Soil Dairy, pray for a judgment against Hubbard and Land O'Lakes for breach of Implied Warranty for a Particular Purpose, and for an amount that will fully and fairly compensate the Plaintiffs for their losses, together with interest as provided by law, and for such other and further relief as the Court deems just and proper.

## COUNT III – BREACH OF DUTY VOLUNTARILY ASSUMED

29. Plaintiff realleges Paragraphs 1 through 28 as if fully set forth therein.

30. Hubbard and Land O' Lakes voluntarily assumed duties either by undertaking responsibilities or by promising to do certain work in mixing the milk replacement correctly, or replacing the tainted product in a timely manner.

31. For all the conduct and omissions set for in Paragraph 20 (a through e), Hubbard and Land O' Lakes breached its duties voluntarily assumed.

32. As a direct and proximate result of this breach, Black Soil Dairy suffered damages to their property.

WHEREFORE, Plaintiff, Black Soil Dairy, pray for a judgment against Hubbard and Land O'Lakes for Breach of Duty Voluntarily Assumed, and for an amount that will fully and fairly compensate the Plaintiffs for its losses, actual, consequential, and incidental damages; together with interest as provided by law, and for such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury for all issues triable of right by jury.

WINTERFELD LAW, P.L.C.

By: _____

Jenny L. Winterfeld
ICIS #AT0010437
P.O. Box 134
Sioux Center, IA 51250
Phone:  (712) 722-3210
Fax:  (712) 722-3211
jenny@winterfeldlaw.com
ATTORNEY FOR PLAINTIFF