**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION**

BLACK SOIL DAIRY, LLC,

       Plaintiff,

vs.

LAND O'LAKES, INC.,

       Defendant.

No. 17-CV-4065-LRR

**ORDER**

_____

*TABLE OF CONTENTS*

*I.   INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *1*

*II.  RELEVANT PROCEDURAL HISTORY* . . . . . . . . . . . . . . . . . . . . . . . *2*

*III. SUBJECT MATTER JURISDICTION.* . . . . . . . . . . . . . . . . . . . . . . . *2*

*IV. SUMMARY JUDGMENT STANDARD* . . . . . . . . . . . . . . . . . . . . . . *2*

*V.  RELEVANT FACTUAL BACKGROUND.* . . . . . . . . . . . . . . . . . . . . . *4*
     *A.   Parties* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *4*
     *B.   Overview of the Dispute* . . . . . . . . . . . . . . . . . . . . . . . . . . *4*

*VI. ANALYSIS.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *6*
     *A.   Tort Claims* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *6*
          *1.   Parties' arguments* . . . . . . . . . . . . . . . . . . . . . . . . . *6*
          *2.   Applicable law.* . . . . . . . . . . . . . . . . . . . . . . . . . . *7*
          *3.   Application.* . . . . . . . . . . . . . . . . . . . . . . . . . . . *8*
     *B.   Breach of Implied Warranty of Fitness* . . . . . . . . . . . . . . . . . *11*
          *1.   Parties' arguments* . . . . . . . . . . . . . . . . . . . . . . . . *11*
          *2.   Applicable law.* . . . . . . . . . . . . . . . . . . . . . . . . . *11*
          *3.   Application.* . . . . . . . . . . . . . . . . . . . . . . . . . . *12*

*VII. CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *14*

*I. INTRODUCTION*

     The matter before the court is Defendant Land O'Lakes, Inc.'s ("Land O'Lakes") Motion for Summary Judgment ("Motion") (docket no. 42).

## II. RELEVANT PROCEDURAL HISTORY

On August 15, 2017, Black Soil Dairy, LLC ("Black Soil") filed a "Petition and Jury Demand" ("Petition") (docket no. 2) in the Iowa District Court for Sioux County, Iowa. In the Petition, Black Soil asserts three claims against Land O'Lakes[1]: (1) Count I alleges that Land O'Lakes was negligent in a number of respects related to a milk replacement delivered to Black Soil; (2) Count II alleges that Land O'Lakes breached an implied warranty of fitness regarding the milk replacement; and (3) Count III alleges that Land O'Lakes breached its voluntarily assumed duties. *See* Petition at 3-5. On September 19, 2017, Land O'Lakes filed an Answer (docket no. 5). On October 13, 2017, Land O'Lakes filed a Notice of Removal (docket no. 1), bringing the case before the court.

On August 16, 2018, Land O'Lakes filed the Motion. On September 6, 2018, Black Soil filed a Resistance (docket no. 55). On September 11, 2018, Land O'Lakes filed a Reply (docket no. 64). On September 27, 2018, Black Soil filed an Amended Resistance (docket no. 73). Land O'Lakes has requested oral argument, but the court finds that oral argument is unnecessary. The matter is fully submitted and ready for decision.

## III. SUBJECT MATTER JURISDICTION

The court has diversity jurisdiction over the claims because complete diversity exists between the parties and the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332(a)(1) ("The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000 . . . and is between . . . citizens of different States.").

## IV. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine

---

[1] The Petition also included claims against Ridley USA Inc. ("Ridley"). *See generally* Petition. On August 22, 2018, Black Soil and Ridley filed a joint Stipulation of Dismissal Without Prejudice (docket no. 43) dismissing Ridley from this action without prejudice.

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Summary judgment is proper 'if the pleadings, the discovery and disclosure materials on file, and any affidavits show'" an absence of a genuine dispute as to a material fact. *Hilde v. City of Eveleth*, 777 F.3d 998, 1003 (8th Cir. 2015) (quoting *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc)). "A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case." *Massey-Diez v. Univ. of Iowa Cmty. Med. Servs., Inc.*, 826 F.3d 1149, 1157 (8th Cir. 2016) (quoting *Gazal v. Boehringer Ingelheim Pharm., Inc.*, 647 F.3d 833, 837-38 (8th Cir. 2011)). "The movant 'bears the initial responsibility of informing the district court of the basis for its motion,' and must identify 'those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact.'" *Torgerson*, 643 F.3d at 1042 (alterations in original) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Once the movant has done so, "the nonmovant must respond by submitting evidentiary materials that set out 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting *Celotex Corp.*, 477 U.S. at 324).

On a motion for summary judgment, the court must view the facts "in the light most favorable to the nonmoving party." *Id.* (quoting *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009)). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial," and summary judgment is appropriate. *Ricci*, 557 U.S. at 586 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). "The nonmovant 'must do more than simply show that there is some metaphysical doubt as to the material facts' . . . ." *Torgerson*, 643 F.3d at 1042 (quoting *Matsushita*, 475 U.S. at 586). Instead, "[t]o survive a motion for summary judgment, the nonmoving party must substantiate [its] allegations with sufficient probative evidence [that] would permit a finding in [its] favor based on more than mere

3

speculation, conjecture, or fantasy." *Williams v. Mannis*, 889 F.3d 926, 931 (8th Cir. 2018) (third alteration in original) (quoting *Barber v. C1 Truck Driver Training, LLC*, 656 F.3d 782, 801 (8th Cir. 2011)). Mere "self-serving allegations and denials are insufficient to create a genuine issue of material fact." *Anuforo v. Comm'r of Internal Revenue*, 614 F.3d 799, 807 (8th Cir. 2010).

## V. RELEVANT FACTUAL BACKGROUND

Viewing the evidence in the light most favorable to the nonmoving party and affording it all reasonable inferences, the uncontested material facts are as follows.

### A. Parties

Black Soil is a Michigan limited liability company. Statement of Undisputed Material Facts in Support of Motion ("SUMF") (docket no. 42-2) ¶ 1. Black Soil's members are citizens of Iowa and Michigan. *Id*. Land O'Lakes is a Minnesota corporation with its principal place of business in Arden Hills, Minnesota. *Id*. ¶ 4. Land O'Lakes is a citizen of Minnesota. *Id*. Milk Products, LLC ("Milk Products") is a Minnesota limited liability company. *Id*. ¶ 6. Milk Products's sole member is Purina Animal Nutrition, LLC ("Purina"), which is a Delaware limited liability company. *Id*. Land O'Lakes is a member of Purina. *Id*.

### B. Overview of the Dispute

Milk Products manufactures and distributes animal milk-replacer products used to feed baby animals, including calves. *Id*. ¶ 7. Milk Products manufactures certain milk-replacer products for Ridley. *Id*. ¶ 9. Ridley conducts business as Hubbard Feeds, Inc. ("Hubbard"). *Id*. ¶ 3. One of Ridley's customers is Doon Elevator Co., Inc. ("Doon"). *Id*. ¶ 12. During 2016, Doon sold certain milk-replacer products that it purchased from Ridley to a calf producer in Iowa known as West Edge Land & Cattle LLC ("West Edge"). *Id*. ¶ 13. West Edge is a subsidiary of Black Soil. Response to SUMF (docket no. 73-2) ¶ 14; Appendix in Support of Resistance Vol. II (docket no. 73-6) at 3. One of

4

the milk-replacer products that Milk Products manufactured for Ridley, Ridley sold to Doon and Doon sold to West Edge was DEC HI E 22-20 AM NM SAF (no cup) Calf Milk Replacer ("the Product"). SUMF ¶ 15. West Edge used the Product for its ordinary purpose, namely to feed calves. *Id*. ¶ 21. At some point in the summer of 2016, Milk Products learned that West Edge had complained that the Product contained "brown specks." *Id*. ¶ 22.

Black Soil claims that its calves experienced an outbreak of Salmonella after West Edge began feeding them the Product. *Id*. ¶ 46. Black Soil asserts that the Product "had been changed and it appeared the milk replacer was not performing as it should" and that "[t]he calves were experiencing malnourishment." Statement of Additional Material Facts ("Additional SUMF") (docket no. 73-3) ¶ 9. Black Soil's expert opined that "the black specks" indicated an "aberration in the [P]roduct [which] would result in malnutrition leading to a diminished immune system and therefore pre-disposition to infectious disease." *Id*. ¶ 11. Black Soil asserts that the Product was "defective" which "led to malnourishment and a diminished immune system, and thus the subject calves were unable to effectively mount a sufficient immune response to opportunistic pathogens (such as [S]almonella . . . ) resulting in increased morbidity and mortality rates." *Id*. ¶ 19. Black Soil does not contend that the Product was contaminated with Salmonella. *See* Response to SUMF ¶ 47 (denying that Dr. Little's report states that the Product may have been contaminated with Salmonella); *see also* Petition at 3 (claiming that a "veterinarian observed that there had been a problem with [the Product] . . . which contributed to the severity of the [S]almonella" the calves contracted). Black Soil asserts that the mortality rate of its calves increased significantly throughout the summer of 2016, but decreased in the fall after it switched milk replacers. *See* Additional SUMF ¶¶ 8, 13-15. Black Soil subsequently filed this action.

5

## VI. ANALYSIS

In the Motion, Land O'Lakes alleges that it is entitled to summary judgment on each of Black Soil's claims. *See* Motion at 1.

### A. Tort Claims

In Count I, Black Soil asserts that Land O'Lakes "owed a duty of care to Black Soil . . . to mix the milk replacement delivered for Black Soil['s] . . . calves using untainted milk, at a minimum, in a reasonably safe condition." Petition at 3. Black Soil contends that Land O'Lakes was negligent in "mixing the feed in such a manner that caused malnourishment," "failing to ensure proper levels of nourishment to prevent weakened immune systems in the calves . . . predisposing calves to infectious diseases," "failing to follow standard feed mixing practices by using tainted milk product," "failing to properly inspect the feed as mixed and delivered to [Black Soil] to ensure the product conformed to applicable standards in the feed industry," and "failing to act as a reasonable and prudent feed company under the circumstances described." *Id*. In Count III, Black Soil asserts that Land O'Lakes breached "voluntarily assumed duties," for all the reasons enumerated above, and "[a]s a direct and proximate result of this breach, Black Soil . . . suffered damages to their property." *Id*. at 5.

#### 1. Parties' arguments

Land O'Lakes contends that it is entitled to summary judgment on Counts I and III because these tort claims "fail as a matter of law under the economic-loss doctrine." Brief in Support of Motion (docket no. 42-1) at 7. Land O'Lakes asserts that "[t]he gravamen of [Black Soil's] claims is that the . . . Product was not of the quality promised or expected." *Id*. Land O'Lakes argues that Black Soil's claims involve "disappointed expectations based upon the quality of a product, not harm caused by a dangerously defective product or a sudden or dangerous occurrence" and, therefore, the tort claims are "barred by the economic-loss doctrine." *Id*. at 8.

Black Soil asserts that "[t]he damages in this case are not purely economic and therefore[,] do not fall under the economic loss doctrine." Brief in Support of Resistance (docket no. 73-1) at 12. Black Soil further states that "[t]he damage to the cattle was from the product itself and not just unsatisfied expectations as to [the] product's performance." *Id*. Black Soil contends that "this case can be distinguished from classic economic loss cases due to the dangerous and hazardous nature of the product and the great loss that goes beyond that of the product itself." *Id*.

### 2. *Applicable law*

The economic loss doctrine is the "generally recognized principle of law that plaintiffs cannot recover in tort when they have suffered only economic harm." *Richards v. Midland Brick Sales Co., Inc.*, 551 N.W.2d 649, 650 (Iowa Ct. App. 1996). Iowa courts "have consistently found the proper remedy is in contract, not tort, in actions where the only damage was a loss of the benefit of the bargain or was to the product itself." *Rozeboom Dairy, Inc. v. Valley Dairy Farm Automation, Inc.*, No. 09-1447, 2011 WL 662338, at *6 (Iowa Ct. App. Feb. 23, 2011); *see also Tomka v. Hoechst Celanese Corp.*, 528 N.W.2d 103, 107 (Iowa 1995) ("[C]ontract law protects a purchaser's expectation interest that the product received will be fit for its intended use."). In contrast, Iowa courts "have consistently allowed recovery in tort where the product was dangerous to the user and caused injuries extending to property other than the product itself." *Rozeboom*, 2011 WL 662338 at *6; *see also Tomka*, 528 N.W.2d at 107 ("The essence of products liability law is that the plaintiff has been exposed, through a dangerous product, to a risk of injury to his person or property.").

"[T]he line to be drawn is one between tort and contract rather than between physical harm and economic loss." *Nelson v. Todd's Ltd.*, 426 N.W.2d 120, 125 (Iowa 1988). When damage is "the foreseeable result from a failure of the product to work properly because of a defect or omission from the product . . . the remedy lies in

7

contract." *Id*. "Tort theory, on the other hand, is generally appropriate when the harm is a sudden or dangerous occurrence, frequently involving some violence or collision with external objects, resulting from a genuine hazard in the nature of the product defect." *Id*.

> [T]he line between tort and contract must be drawn by analyzing interrelated factors such as the nature of the defect, the type of risk, and the manner in which the injury arose. These factors bear directly on whether the safety-insurance policy of tort law or the expectation-bargain protection policy of warranty law is most applicable to a particular claim.

*Determan v. Johnson*, 613 N.W.2d 259, 262 (Iowa 2000) (quoting *Nelson*, 426 N.W.2d at 124-25). "In analyzing whether contract law or tort law applie[s], [the court] focuse[s] not on the presence or absence of physical harm but on whether the defect in the product was dangerous to the user." *Tomka*, 528 N.W.2d at 106. Essentially, "defects of suitability and quality are redressed through contract actions and safety hazards through tort actions." *Id.* at 107 (quoting *Northridge Co. v. W.R. Grace & Co.*, 471 N.W.2d 179, 185 (Wis. 1991)).

### 3. *Application*

The court finds that the economic loss doctrine bars Blacks Soil's claims in Counts I and III. The cases of *Tomka* and *Nelson* are directly applicable to the present action. In *Tomka*, the plaintiff "sought to recover damages he sustained when cattle he was custom feeding were implanted with a hormone manufactured by [the defendant]." 528 N.W.2d at 105. The plaintiff contended that the cattle "did not gain weight as they should have and consequently the cattle were sold later than he expected" causing the plaintiff to "los[e] money on his contracts." *Id*. The plaintiff asserted that the product was designed to promote growth in cattle, and that it failed to do so. *See id.* at 107. The Iowa Supreme Court concluded that this type of damage "clearly [fell] within contract-warranty theories, not tort theories." *Id*.

Similarly, in *Nelson*, the plaintiff sought to recover on the theory of strict liability

8

in tort. *See* 426 N.W.2d at 121. The plaintiffs operated a butcher shop and purchased a curing agent[2] from the defendant. *See id*. The curing agent purchased from the defendant did not contain an essential ingredient and, as a result, "substantial quantities of meat prepared and sold by the [plaintiffs] spoiled and were returned by their customers." *Id*. The Iowa Supreme Court concluded that the damage that the plaintiffs' suffered "was the foreseeable result from a failure of the product to work properly because of a defect or omission from the product." *Id*. at 125.

The court finds that the same conclusion is required in the present case. Here, Black Soil contends that the Product "had been changed and it appeared the milk replacer was not performing as it should" and that "[t]he calves were experiencing malnourishment." Additional SUMF ¶ 9. Black Soil asserts that the Product was "defective" which "led to malnourishment and a diminished immune system, and thus the subject calves were unable to effectively mount a sufficient immune response to opportunistic pathogens (such as [S]almonella . . . ) resulting in increased morbidity and mortality rates." *Id*. ¶ 19; *see also* Petition at 3 (alleging that Land O'Lakes was negligent in "failing to ensure proper levels of nourishment to prevent weakened immune systems in the calves, and therefore predisposing calves to infectious diseases" and "failing to properly inspect the feed as mixed and delivered to [Black Soil] to ensure the [P]roduct conformed to applicable standards in the feed industry"). At its most basic, Black Soil's contention is that the Product failed to perform as expected, namely that it did not provide adequate nourishment for the calves.

The court finds that Black Soil's attempt to liken this case to *Ballard v. Amana Soc'y, Inc.*, 526 N.W.2d 558 (Iowa 1995) is unavailing. In *Ballard*, the plaintiffs brought a cause of action "alleg[ing] their swine herd was injured after ingesting toxic corn

---

[2] "The purpose of curing agents is to kill bacteria which can spoil meat during the smoking process." *Nelson*, 426 N.W.2d at 121.

9

purchased from [the defendants]." 526 N.W.2d at 559. The plaintiffs "discovered the corn contained toxins, causing the death of several hogs and a reduction or elimination of the sows' reproductive abilities." *Id*. The Iowa Supreme Court determined that "the existence of toxins in the feed corn was a genuine hazard peripheral to the sale and a serious product defect, causing the death of swine." *Id*. at 562. Thus, the court concluded that the proper remedy was in tort rather than contract. *See id*. (noting that "plaintiffs' proper remedy was in contract rather than tort because the loss related to 'a consumer or user's disappointed expectations due to deterioration, internal breakdown or nonaccidental cause'" (quoting *Nelson*, 426 N.W.2d at 125)).

Assuming, without deciding, that the Product was nutritionally deficient, the court finds that such a deficiency "relates to a consumer or user's disappointed expectations due to deterioration, internal breakdown or non-accidental cause" and therefore, "the remedy lies in contract." *Nelson*, 426 N.W.2d at 125. As noted, Black Soil does not contend that the Product was contaminated with Salmonella. *See* Response to SUMF ¶ 47 (denying that Dr. Little's report states that the Product may have been contaminated with Salmonella). Rather, Black Soil contends that the Product was nutritionally deficient which rendered the calves more susceptible to Salmonella. *See* Petition at 3 (claiming that a "veterinarian observed that there had been a problem with [the Product] . . . which contributed to the severity of the [S]almonella" the calves contracted); *see also* Appendix in Support of Resistance Vol. II at 23 (opining that "[d]ecreased nutritional levels in the milk replacer resulted in increased susceptibility to Salmonella infection"). Black Soil states "that [S]almonella bacteria is highly pathogenic and may cause disease in calves." Response to SUMF ¶ 47; *see also* Additional SUMF ¶ 31 (acknowledging that "Salmonella can become highly contagious on a calf ranch" and that "rigorous use of antibiotics and vaccination is commonly practiced to maintain the health of incoming calves"). Therefore, this case is distinguishable from an allegation that the Product itself was toxic or that the harm was

10

caused by a genuine hazard in the nature of the alleged Product defect. Accordingly, the court shall grant the Motion as to Counts I and III.

## B. Breach of Implied Warranty of Fitness

In Count II, Black Soil alleges that "Land O'Lakes designed, controlled, and directed the milk replacement mixture and under Iowa law is responsible for an implied warranty of fitness for a particular purpose." Petition at 4. Black Soil contends that "[a]s a proximate cause of tainted milk, the milk replacement was inadequate, leading to malnourishment, an increased risk of infection and death among the calves." *Id*. Black Soil asserts that Land O'Lakes's failure "to use untainted milk product in its milk replacement constitutes a breach of implied warranty that [the Product] would be reasonably fit for the intended use and purpose of feed." *Id*.

### 1. Parties' arguments

Land O'Lakes asserts that Black Soil's claim for breach of implied warranty of fitness fails because the Product "was not used for any purpose other than its ordinary purpose." Brief in Support of Motion at 8. Land O'Lakes states that "an implied warranty of fitness only arises when a plaintiff uses goods for a special or particular purpose." *Id*. at 10. Land O'Lakes contends that "[t]he ordinary purpose or use [of the Product] was to feed calves" and that "West Edge used the . . . Product for this ordinary use." *Id*. Land O'Lakes argues that because the Product was not used for any purpose other than its ordinary use Black Soil's claim fails as a matter of law. *See id*.

### 2. Applicable law

"Under Iowa law a warranty that goods sold are merchantable is implied in a contract for their sale." *Tomka*, 528 N.W.2d at 108. Iowa law additionally provides that:

> Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified . . . an implied warranty that the goods shall be fit

for such purpose.

Iowa Code § 554.2315. Recovery under § 554.2315 requires "proof of the following elements: (1) the seller had reason to know of the buyer's particular purpose; (2) the seller had reason to know the buyer was relying on the seller's skill or judgment to furnish suitable goods; and (3) the buyer in fact relied on the seller's skill or judgment to furnish suitable goods." *SmithCo Mfg., Inc. v. Haldex Brake Prods. Corp.*, 708 F. Supp. 2d 816, 820 (N.D. Iowa 2010).

> A "particular purpose" differs from the ordinary purpose for which the goods are used in that it envisages a specific use by the buyer which is peculiar to the nature of his business whereas the ordinary purposes for which goods are used are those envisaged in the concept of merchantability and go to uses which are customarily made of the goods in question.

*Id.* at 821 (quoting Iowa Code § 554.2315 cmt. 2). "The warranty of fitness under [§] 554.2315 is said to turn on the 'bargain-related' facts as to what the seller had reason to know about the buyer's purpose for the goods and about his reliance on the seller's skill or judgment in selecting them." *Van Wyk v. Norden Labs., Inc.*, 345 N.W.2d 81, 84 (Iowa 1984). Generally, the particular use may not be the use normally expected to be made of the goods. *See id.* at 85. "For example, shoes are generally used for the purpose of walking upon ordinary ground, but a seller may know that a particular pair was selected to be used for climbing mountains." Iowa Code § 554.2315 cmt. 2. However, "in some cases a buyer's particular purpose will be the same as the ordinary purpose for which a product is furnished." *Van Wyk*, 345 N.W.2d at 85.

### 3. Application

The court finds that Black Soil's claim for breach of implied warranty fails as a matter of law. Black Soil contends that Land O'Lakes "is responsible for an implied warranty of fitness for a particular purpose" and that Land O'Lakes breached the "[i]mplied [w]arranty for a [p]articular [p]urpose." Petition at 4-5. However, Black Soil

12

fails to allege that it used the Product for any purpose distinct from its ordinary purpose. *See generally id.* Rather, Black Soil admits that the Product was used for its ordinary purpose, namely to feed calves. *See* SUMF ¶ 21 ("West Edge used the . . . Product for its ordinary purpose, namely to feed calves."); Response to SUMF ¶ 21 (admitting the same).

Further, even assuming that Black Soil intended to use the Product for a particular purpose, it has presented no evidence that Milk Products, or Land O'Lakes, had reason to know of the purpose. Black Soil admits that Milk Products manufactured the Product for Ridley, Ridley sold the Product to Doon and Doon ultimately sold the Product to West Edge. *See* SUMF ¶ 15; Response to SUMF ¶ 15 (admitting the chain of sale). Black Soil has presented no bargain-related facts in this case to support a finding that Milk Products had reason to know about Black Soil's alleged particular purpose. *See SmithCo Mfg.*, 708 F. Supp. 2d at 820 (requiring proof that "the seller had reason to know of the buyer's particular purpose"); *see also Stoffel v. Thermogas Co.*, 998 F. Supp. 1021, 1030 (N.D. Iowa 1997) ("[T]here is nothing in the record to show that [the plaintiff] communicated to [the defendant] his intended use of the propane. Without such a communication, no implied warranty can arise, and summary judgment in [the defendant's] favor must be granted."); *Van Wyk*, 345 N.W.2d at 85 (concluding that the "implied warranty of fitness for a particular purpose" was inapplicable where a vaccine was sold to veterinarians for ordinary use, and the veterinarians subsequently used the vaccine on the plaintiffs' calves and "[t]here was no evidence that the seller had reason to know of any purpose for the plaintiffs' use of the vaccine, other than its ordinary use"). Therefore, Black Soil has failed to establish that a genuine issue of material fact exists as to its claim for breach of implied warranty for a particular purpose. Accordingly, the court shall grant the Motion as to Count II.

## VII. CONCLUSION

For the foregoing reasons, it is hereby **ORDERED**:

(1) Land O'Lake's Motion for Summary Judgment (docket no. 42) is **GRANTED**;

(2) The Clerk of Court is **DIRECTED** to enter judgment in favor of Land O'Lakes and against Black Soil;

(3) The Clerk of Court is **DIRECTED** to terminate all outstanding motions;

(4) The Final Pretrial Conference is **CANCELED** and the trial date is **VACATED**.

**IT IS SO ORDERED.**

Dated this 19th day of October, 2018.

LINDA R. READE, JUDGE
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF IOWA